**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SOMERSET PLACE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KATHLEEN SEBELIUS, the Secretary of the United States Department of Health and Human Services; CHARLENE FRIZZERA, Chief Operating Officer and Acting Administrator for the Centers for Medicare and Medicaid Services; JOHN HAMMARLUND, the Regional Administrator for the Centers for Medicare and Medicaid Services; | ) ) ) ) ) ) ) ) ) ) | Case No._____ |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF
AND DECLARATORY JUDGMENT**

Plaintiff Somerset Place, LLC ("**Somerset**"), by and through its attorneys Polsinelli Shughart PC, hereby files its Verified Complaint for Injunctive Relief and Declaratory Judgment and states as follows:

**I. INTRODUCTION**

1. This is a civil action for a Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Declaratory Judgment to prevent Defendants from terminating Somerset's Medicaid provider agreement without appropriate justification or due process.

2. On January 19, 2010, Somerset was informed by the Centers for Medicare and Medicaid Services ("**CMS**") that as a result of deficiency findings made by CMS, Somerset's Medicaid provider agreement will be terminated effective February 7, 2010 and that Somerset may appeal this decision through an administrative review process. The Medicaid regulations provide that Somerset is entitled to appeal this termination. Despite requesting an expedited appeal, Somerset's appeal will not be heard and decided until mid-July 2010 or later – well after the scheduled termination of its Medicaid provider agreement on February 7, 2010. Pursuant to

82892.7

the operations manual prepared by CMS that guides the review of facilities like Somerset, Somerset is entitled to a hearing before an Administrative Law Judge ("**ALJ**") prior to termination.  Terminating Somerset's Medicaid Provider Agreement before its ALJ hearing violates Somerset's due process rights and will cause irreparable harm to Somerset, its residents and their families, and the community in which Somerset operates.  Somerset seeks a temporary restraining order and preliminary injunction to preserve the status quo and to prevent the termination from becoming effective until Somerset is able to exhaust its appeal process.

3. Somerset also seeks a Declaratory Judgment that the bases relied upon by Defendants for terminating Somerset's Medicaid provider agreement are erroneous and do not rise to the level of "immediate jeopardy" of the health and safety of Somerset's nursing home residents; that the January 19, 2010 deficiencies do not justify termination of the Medicaid provider agreement; and that the January 19, 2010 deficiencies have been remedied.

## II. STATEMENT OF FACTS

**A.   PARTIES**

4. Plaintiff Somerset Place, LLC is an Illinois limited liability corporation that operates a psychiatric care facility for the mentally ill in Chicago, Illinois.  Somerset is a licensed intermediate care facility that specializes in the care of residents with mental illness and it is certified as an Institution for Mental Diseases ("**IMD**").

5. Defendant Kathleen Sebelius, sued in her official capacity only, is the Secretary of the United States Department of Health and Human Services ("**HHS**"), an agency of the United States government.  As Secretary of HHS ("**Secretary**"), she is responsible for administering the Social Security Act, 42 U.S.C. §§ 301, *et seq.*, and in particular for oversight of the Medicaid Program.  42 U.S.C. §§ 1396, *et seq.*

6. Defendant, Charlene Frizzera, sued in her official capacity only, is the Chief Operating Officer and the Acting Administrator for CMS, which is a division of HHS.  As Chief Operating Officer and the Acting Administrator, she is charged with monitoring and inspecting care facilities to ensure their compliance with the conditions of participation required by the Medicaid Program.

7. Defendant John Hammarlund, sued in his official capacity only, is the Regional Administrator of CMS, Region V, the region encompassing the State of Illinois.  As Regional

Administrator, he is responsible for providing comprehensive oversight for the administration of the Medicaid Program in the geographical region encompassing the State of Illinois.

**B.    JURISDICTION AND VENUE**

8. This action arises under the Social Security Act, 42 U.S.C. §§ 301, *et seq.* and the Medicaid Act, 42 U.S.C. §§ 1396, *et seq.*, as well as the Fifth Amendment to the United States Constitution.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and federal statutes and regulations. Medicaid regulations do not require Somerset to exhaust all of its administrative remedies prior to seeking judicial review. *See Illinois Council on Long Term Care Inc. v. Shalala*, 143 F.3d 1072, 1076 (7th Cir. 1998), *rev'd on other grounds*, 529 U.S. 1 (2000).

10. Venue is proper in the Court pursuant to 28 U.S.C. § 1391. The Somerset facility is located in Cook County, Illinois; the CMS survey that resulted in a termination decision was conducted in Cook County, Illinois; and Somerset seeks to enjoin actions that will take place in Cook County, Illinois.

**C.    MEDICAID PROGRAM REQUIREMENTS**

11. The Medicaid Program, as set forth in Title XIX of the Social Security Act, is a joint federal and state program that provides medical assistance to individuals who are, among other things, elderly or disabled. The federal government and each participating state jointly fund the Medicaid Program. The Illinois Department of Healthcare and Family Services is responsible for administering Illinois' Medicaid program.

12. In order to qualify to receive payments under the Medicaid Program, each participating care facility must be certified by meeting participation requirements established by federal law. 42 U.S.C. § 1396r; 42 C.F.R. §§ 483.1, *et seq*.

13. The Secretary is responsible for conducting periodic onsite inspections, termed "surveys," of care facilities such as Somerset to determine whether they meet federal certification requirements and thus are eligible to participate in the Medicaid Program. The findings from inspection surveys are delivered in written form to the care facilities.

14. The Secretary contracts with state survey agencies to conduct Medicaid surveys on its behalf. The Secretary makes certification determinations for most facilities based upon the

recommendations of the state survey agencies. In addition, the Secretary may conduct surveys on its own through CMS.

15. Congress has authorized the Secretary to exercise an array of remedies for care providers who are found to be non-compliant with the requirements for participation in the Medicaid Program, including mandating plans of correction, temporary management, civil money penalties, and termination of a facility's Medicaid provider agreement. 42 U.S.C. § 1396r(h).

16. The term "substantial compliance" means a level of compliance with the requirements of participation such that any identified deficiencies pose no greater risk to resident health or safety than the potential for causing minimal harm. 42 C.F.R. § 488.301.

17. Failure to adhere to the federal participation requirements results in "deficiencies." Individual deficiencies are classified as "tags" under Appendix P of the State Operations Manual ("**Operations Manual**") published by CMS. Tag numbers range from F150 to F522 and are linked to the participation requirements located in 42 C.F.R. part 483.

18. Deficiencies are further characterized by scope and severity ratings. 42 C.F.R. § 488.408. Care facilities with "A," "B," or "C" deficiency severity ratings are still deemed in substantial compliance with the requirements. By contrast, "D," "E," and "F" deficiencies pose no actual harm with potential for more than minimal harm to residents, while "G," "H," and "I" deficiencies constitute actual harm that does not rise to the level of immediate jeopardy. Finally, deficiency severity ratings of "J," "K," or "L" represent immediate jeopardy to a resident's health and safety. Deficiency ratings are further classified in terms of scope as "isolated," "pattern," or "widespread."

19. Remedies for deficiencies are assigned according to the scope and severity rating. 42 C.F.R. § 488.408.

20. Where the Secretary determines that a care facility's deficiencies pose "immediate jeopardy" to resident health and safety, the Medicaid Act authorizes either the appointment of temporary management over the facility or termination of the facility's Medicaid provider agreement. 42 U.S.C. § 1396r(h)(3)(B). There is no defined time period within which such a termination of a nursing facility must be effected. 42 C.F.R. § 488.410 (c)(1) and (c)(2).

21. A deficiency rises to the level of "immediate jeopardy" where the facility's non-compliance with the requirements of participation "has caused or is likely to cause serious harm,

impairment or death to the resident." 42 C.F.R. § 488.301.  In determining whether a deficiency is an "immediate jeopardy", the CMS's Operations Manual directs surveyors to identify whether "the harm or potential [is] likely to occur in the very near future. . ."  Operations Manual, App'x Q § V, Procedures, subsection (C)(2).

22. Where a nursing facility's participation in Medicaid will be terminated, federal law entitles the facility to an appeal process that includes a hearing before an ALJ; review of the ALJ decision by the HHS Departmental Appeals Board ("**DAB**"); and judicial review of the DAB's decision.  42 C.F.R. §§ 498.5(b) and (k).

23. The Operations Manual also provides that termination of Medicaid-only nursing facilities must be afforded the "opportunity for a hearing before an ALJ prior to termination." Operations Manual § 3005E (revised May 21, 2004).

**D.    SOMERSET'S PROVISION OF CARE**

24. Somerset is a care facility that has been serving a discrete population of mentally ill residents since 1972.  Somerset is different from a facility that would commonly be referred to as a "nursing home" in that it does not admit elderly residents or residents with skilled nursing needs.  Instead, Somerset serves the needs of a challenging and underserved population suffering from mental illness.  For purposes of the Medicaid regulations, Somerset is a "nursing facility." Somerset works with appropriate government agencies to screen its residents and develop appropriate programs to meet the needs of each resident.  Somerset is not a locked facility.  Each resident has the right to refuse treatment and to leave against medical advice.  However, all residents admitted to the facility consent to community access restriction requirements. Residents participate in treatment programs, including vocational/work programs, independent living skills, symptom management groups, anger management groups, and substance abuse programs.

25. Somerset is licensed as a long-term care facility by state regulators with 450 licensed beds.  Somerset has a current occupancy of 307 beds (approximately a 68% occupancy rate).  Approximately 305 (99%) of these residents receive benefits through the Medicaid Program and the remaining two residents (less than 1%) are able to pay for their care privately through private insurance, self-pay, or other means.

26. Somerset employs more than 250 individuals including, among others, multiple psychiatric rehabilitation service coordinators, two substance abuse coordinators, a full-time recreation therapist and staff of fifteen, and a full-time art therapist.

27. Somerset has been certified to participate in the Medicaid Program and has entered into a provider agreement for the provision of continued care services to eligible residents. A true and correct copy of the Somerset provider agreement is attached hereto as **Exhibit A**. Medicaid has what is called a "Medicaid IMD exclusion," which bars federal contributions to the cost of medically necessary inpatient care incurred in treating Medicaid beneficiaries ages 22-64 who receive care at the IMDs. 42 U.S.C. §1396d. An IMD is defined as a "hospital, nursing facility, or other institution of more than 16 beds, that is primarily engaged in providing diagnosis, treatment, or care of person with mental diseases, including medical attention, nursing care and related services." 42 U.S.C. § 1396d(i). For those Somerset residents covered by Medicaid, Somerset, as an IMD, receives payment for their care from the State of Illinois; the federal government does not contribute to the cost of care.

28. On February 15, 2002, Illinois adopted a regulation that classified IMDs into two categories. A Class I IMD is a facility where, on March 1, 2001, more than 50% of its residents were mentally ill. Class I IMD facilities are reimbursed at rates equal to Medicaid nursing facilities. 89 Ill. Admin. Code §§ 145.40, 145.80. Following the adoption of this regulation, Illinois identified 27 IMDs. A Class II IMD is a facility where, after March 1, 2001, it achieved a level of greater than 50% of its residents being mentally ill. *Id.* at § 145.50. Class II IMDs are reimbursed at 50% of the rate of Class I IMDs. *Id.* at § 145.80(b)(2). This regulation has effectively prevented new facilities from focusing primarily on the care of mentally ill residents and effectively limited the number of IMD nursing facilities in Illinois to 27.

29. Somerset (as well as other IMD facilities) is staffed with mental health professionals, including Licensed Clinical Social Workers and Licensed Clinical Psychiatric Counselors. These mental health professionals provide the services and treatment plans needed by the residents.

30. To receive payment for services provided under its provider agreement, a provider must comply with established standards of care and are subject to periodic inspection surveys by the Illinois Department of Public Health ("**IDPH**") and/or CMS.

31. On January 5, 2010, CMS initiated a federal survey of Somerset. On January 19, 2010, CMS sent Somerset a Federal Notice of Unremoved Immediate Jeopardy and Notice of Imposition of Remedies ("**CMS Notice**"). A true and correct copy of the CMS Notice is attached hereto as **Exhibit B**.

32. Typically IMDs are surveyed by IDPH, which has surveyors that have been trained to survey facilities with residents that are mentally ill. On information and belief, Somerset's survey was completed by CMS surveyors who were not experienced in surveying these types of facilities.

33. CMS determined that Somerset was not in substantial compliance with the Medicaid Program and cited Somerset with four deficiencies that it alleged placed the Somerset residents in "immediate jeopardy" as well as other deficiencies.

34. The CMS Notice informed Somerset that its Medicaid provider agreement was being terminated, the termination was a "mandatory twenty-three (23) day termination effective February 7, 2010," and it could request a hearing before the DAB regarding the findings and penalties identified in the CMS Notice.

35. The CMS Notice requested that Somerset submit to CMS an "Allegation of Removal" of the immediate jeopardy findings showing how each immediate jeopardy has been removed and the date of removal.

36. Somerset disputes that the deficiencies identified in the CMS notice placed its residents in immediate jeopardy. Nonetheless, Somerset took immediate action to review and remedy the alleged deficiencies cited by CMS and submitted the requested allegation of removal (which it labeled a Plan of Removal) on January 19, 2010 ("**Allegation of Removal**"). In preparing the Allegation of Removal, Somerset employees spoke with CMS representatives and obtained their input and guidance. The Allegation of Removal was reviewed by CMS and was the subject of negotiations with CMS to obtain CMS's input, address CMS's concerns, and comply with CMS's guidelines. As a result of these discussions the Allegation of Removal was revised and refined six times, including on January 14, 15, 20, 22, 25, and 26 before being accepted by CMS. A true and correct copy of the Final Allegation of Removal is attached hereto as **Exhibit C**.

37. The Allegation of Removal sets forth a detailed plan by which Somerset will remedy each of the deficiencies CMS labeled as causing immediate jeopardy to Somerset's

residents. These plans included, among others, additional staff training and inservices, audits, and new meetings. All of the proposed remedies had a completion date of January 26, 2010. Somerset completed all of the specified tasks in its Allegation of Removal on or before January 26, 2010.

38. On February 1, 2010, CMS informed Somerset that it accepted Somerset's Allegation of Removal of the immediate jeopardy deficiencies cited in the CMS survey ("**CMS Acceptance**"). A true and correct copy of the CMS Acceptance is attached hereto as **Exhibit D**. This acceptance signified CMS's agreement that upon completion of the tasks in the Allegation of Removal, the immediate jeopardy deficiencies would no longer exist and/or no longer pose an immediate jeopardy to Somerset's residents.

39. On February 3 and 4, 2010, CMS returned to Somerset for a revisit survey to verify that Somerset fulfilled the tasks set forth in its Allegation of Removal. Somerset anticipates that CMS may continue its revisit on February 5, 2010, as well.

40. In addition, on January 27, 2010, Somerset contested the findings in the CMS Notice and requested an expedited appeal from the DAB of CMS's imposition of remedies, including the termination of Somerset's provider agreement ("**Somerset's Appeal**"). A true and correct copy of Somerset's Appeal is attached hereto as **Exhibit E**.

41. On February 2, 2010, Somerset received an acknowledgment and initial Pre-Hearing Order from ALJ Steven T. Kessel of the DAB in response to its Appeal ("**Pre-Hearing Order**"). A true and correct copy of the Pre-Hearing Order is attached hereto as **Exhibit F**.

42. Pursuant to the Pre-Hearing Order, Somerset's Appeal will not be heard before July 9, 2010, well after the February 7, 2010 termination of Somerset's Medicaid provider agreement and the relocation of Somerset's residents. In addition, the Pre-Hearing Order contains a provision that requires a party desiring an expedited hearing to file a motion to obtain an expedited hearing. Even though Somerset already requested an expedited hearing in its Appeal, on February 3, 2010, Somerset filed a Motion for an Expedited Hearing with the DAB ("**Somerset's Motion**"). A true and correct copy of Somerset's Motion is attached hereto as **Exhibit G**.

43. Because nearly all of the 307 residents at Somerset are beneficiaries of Medicaid, for whom the State of Illinois pays for their care, Somerset cannot afford to care for the residents once its Medicaid provider agreement is terminated.

44. Relocating nursing home residents has serious detrimental effects on residents. It often results in trauma to the residents which includes, among others, depression and anxiety. These conditions may be exacerbated in this circumstance because all of Somerset's residents already suffer from pre-existing psychiatric conditions.

45. Many of Somerset's residents have called Somerset home for a significant number of years. Relocation of these individuals would cause a serious upheaval of the residents' lives.

46. Relocating the residents not only affects the residents themselves, but also adversely impacts their families who may not have the means or ability to travel to or arrange for alternate nursing care accommodations.

47. The termination of Somerset's Medicaid provider agreement would effectively cause the closure of Somerset, and force Somerset's employees, which number more than 250, to lose their jobs; and cause the loss of revenue in the community generated from Somerset's residents.

## COUNT I: INJUNCTIVE RELIEF

48. The allegations contained in paragraphs 1 through 47 above are incorporated by reference as through fully set forth herein.

49. Somerset disputes that the deficiencies identified in the CMS Notice places the residents in immediate jeopardy. Nonetheless, Somerset has resolved the deficiencies noted in the CMS Notice.

50. Somerset has appropriately and timely initiated its administrative appeal rights to the termination of its Medicaid provider agreement, and has requested an expedited hearing on the merits of its case.

51. While Somerset challenges and is fully entitled to appeal CMS's characterization of the alleged deficiencies as placing the health and safety of the residents in immediate jeopardy and the termination of Somerset's Medicaid provider agreement, the appeals process is entirely meaningless if Defendants can terminate Somerset's Medicaid provider agreement and relocate its residents months before an administrative hearing can be held and decided upon. If this happens, Somerset will close and even if it would have succeeded in its appeal, it will all be for naught.

52. If CMS is permitted to terminate Somerset's Medicaid provider agreement and relocate Somerset's residents, Somerset, its residents, and the community will suffer irreparable and imminent harm. Terminating Somerset's Medicaid provider agreement will make it impossible for the facility to continue caring for its residents, will force the residents to be relocated, and will force Somerset out of business. In addition to the irreparable harm of putting Somerset out of business, CMS's extraordinary remedy will cause serious injuries to the residents who will be forced to find new places to live, and their families who may be unable to travel, visit or otherwise accommodate their family members at new facilities.

53. Somerset's closure would not only cause Somerset and its residents and families severe and irreparable harm, but would also harm the many employees of Somerset who would lose their livelihoods as a result of the closure of Somerset.

54. Somerset does not have an adequate remedy at law absent an injunction to preserve the status quo pending the resolution of its request for expedited appeal.

55. Somerset is likely to prevail on the merits of its review because the deficiencies identified in the CMS Notice do not place the residents in immediate jeopardy. Nonetheless, Somerset complied with the Allegation of Removal it negotiated closely with CMS to resolve the deficiencies identified in the CMS Notice. As a result, there are no immediate jeopardy deficiencies at this time.

56. An injunction is necessary and required in this case to maintain the status quo until the issues between the parties can be heard on the merits through exhaustion of Somerset's administrative remedies.

57. If the decision of the reviewing administrative body favors Somerset, preserving the status quo will result in no harm to any person or entity. If, after final adjudication of Somerset's appeal, CMS prevails and maintains the remedies it currently seeks, the termination and/or transfer of the residents may still occur with no harm resulting to CMS or the other Defendants by the short delay.

58. When balancing the harms, the damage to Somerset, its residents and their families, and the community will be great if termination proceeds and Somerset ultimately prevails, whereas Defendants will not be harmed in any perceptible way and will not incur any damages if the status quo is maintained and CMS ultimately prevails.

59. An injunction preventing the termination of Somerset's Medicaid provider agreement and the relocation of residents from Somerset, greatly benefits the public interest, because it would prevent the disruption and stress that relocation will cause for the facility residents and their families, the employees, and the local community. At the same time, the public interest is not served by an unwarranted and accelerated shut down of a thriving facility that provides care and treatment to over 300 residents.

60. Based on the foregoing, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, a Temporary Restraining Order and Preliminary Injunction should be issued enjoining Defendants from terminating Somerset's Medicaid provider agreement and from relocating Somerset's residents until such time as Somerset's appeal process is exhausted. The Temporary Restraining Order, if entered *ex parte*, should be made to expire at the sooner of 10 days from its entry or at the conclusion of a hearing on Somerset's request for a preliminary injunction.

WHEREFORE, Somerset prays for the following relief:

(a) That the Court issue a Temporary Restraining Order prohibiting the Defendants from terminating Somerset's Medicaid provider agreement; relocating Somerset's residents until further order of the Court; and requiring Somerset to provide notice of termination to the residents unless and until the Somerset has exhausted its appeal process;

(b) That the Court waive the requirement of a security bond;

(c) That the Court set at the earliest possible time a hearing on a Preliminary Injunction on this cause;

(d) That the Court issue a Preliminary Injunction:

    i. Prohibiting Defendants from terminating the Somerset's Medicaid provider agreement unless and until Somerset has exhausted its appeal process;

    ii. Prohibiting Defendants from requiring Somerset to provide notice of termination to the residents unless and until the Somerset has exhausted its appeal process;

    iii. Prohibiting Defendants from making any efforts to and otherwise involuntarily relocate the residents of Somerset unless and until Somerset has exhausted its appeal process, except Defendants may:

(a) identify reasonably appropriate alternative placement in the event Somerset does not prevail in its appeal process;

(b) develop a plan to minimize any transfer trauma or stress to Somerset's residents in the event Somerset does not prevail in its appeal process;

(c) counsel the residents or their guardians or representatives as to available community resources in the event Somerset does not prevail in its appeal process; and

(e) For such other and further relief as this Court deems just and proper.

## COUNT II: DECLARATORY JUDGMENT

61. The allegations contained in paragraphs 1 through 60 above are incorporated by reference as through fully set forth herein.

62. This action is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, and there is actual controversy among the parties.

63. On January 5, 2010, CMS initiated a federal survey of Somerset. On January 19, 2010, CMS sent Somerset the CMS Notice.

64. CMS determined that Somerset was not in substantial compliance with the Medicaid Program and cited Somerset with four deficiencies, that it alleged placed Somerset residents in "immediate jeopardy."

65. On January 26, 2010, after negotiations with and input from CMS, Somerset finalized its Allegation of Removal addressing all of CMS's immediate jeopardy deficiencies. In addition, as of January 26, 2010, Somerset had complied with all of the remedial measures set forth in the Allegation of Removal.

66. On February 1, 2010, CMS approved Somerset's Allegation of Removal of the immediate jeopardy deficiencies cited in the CMS survey.

67. Some of the incidents underlying CMS's findings of "immediate jeopardy" had been abated or no longer existed at the time the CMS survey began on January 5, 2010. Somerset disputes that the four deficiencies cited by CMS in the CMS Notice placed the residents in immediate jeopardy.

68. Any finding by CMS of "immediate jeopardy" deficiencies was clearly erroneous and, nonetheless such deficiencies have been remedied.

WHEREFORE, Somerset asks the Court to declare as follows:

(a) The purported immediate jeopardy deficiencies identified by CMS in the CMS Notice did not place the Somerset residents in immediate jeopardy;

(b) The purported immediate jeopardy deficiencies identified by CMS in the CMS Notice were remedied by Somerset as of January 26, 2010;

(c) Defendants are not entitled to terminate Somerset from participation in the Medicaid Program; and

(d) Somerset is entitled to any other relief that the Court determines is just and appropriate.

Dated: February 4, 2010

Respectfully submitted,

/s/ Anthony C. Porcelli
One of the Attorneys for Plaintiff Somerset Place, LLP

Anthony C. Porcelli (ARDC # 6225868)
Charles P. Sheets (ARDC # 6184912)
Paula S. Kim (ARDC # 6286594)
POLSINELLI SHUGHART PC
161 N. Clark Street
Suite 4200
Chicago, IL 60601
TEL: 312.819.1900
FAX: 312.919-1910
csheets@polsinelli.com
aporcelli@polsinelli.com
pkim@polsinelli.com