# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SOMERSET PLACE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10-cv-764 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | Emergency Judge for |
| KATHLEEEN SEBELIUS, CHARLENE | ) | Judge Samuel Der-Yeghiayan |
| FRIZZERA, and JOHN HAMMARLUND | ) | Assigned Judge |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Yesterday, February 4, 2010, Plaintiff Somerset Place, LLC ("Somerset"), filed this lawsuit. The complaint [1] names three defendants in their official capacities: Kathleen Sebelius (the "Secretary"), the Secretary of the United States Department of Health and Human Services; Charlene Frizzera ("Frizzera"), the Acting Administrator for the Centers for Medicare and Medicaid Services ("CMS"); and John Hammarlund ("Hammarlund"), the Regional Administrator for CMS. Because all of the defendants are sued in their official capacities and Somerset seeks to enjoin all of them from taking actions in their official capacities, the Court for the sake of simplicity will refer to the defendants simply as "the Secretary" in this Order.

This matter is before the Court in its capacity as Emergency Judge, sitting in the place of Judge Der-Yeghiayan, the assigned judge. Before the Court is Somerset's motion for a temporary restraining order [6], which Somerset filed contemporaneously with its complaint. Somerset currently is certified by the Centers for Medicaid and Medicare Services ("CMS"). Somerset's certification allows it to receive Medicaid reimbursements and requires it to remain in "substantial compliance" with specified standards. According to Somerset, the Secretary is

days away from terminating that certification, which will have immediate and irreparable consequences.

The termination, which would be the result of a conclusion by the Secretary that Somerset's patients are in "immediate jeopardy," is set to take place this Sunday, February 7. Somerset alleges that a termination would trigger the process of transferring patients from Somerset to other mental health facilities. The body of Somerset's complaint and motion for a temporary restraining remains largely silent on the deficiencies that led to the Secretary's decision. Somerset, however, has included with its complaint exhibits that speak to the question. Specifically, Somerset attached as exhibits correspondence from CMS indicating that residents of Somerset were under threat of abuse by both staff and residents [see 1-2], had inadequate security [see 1-4], and a were at risk of violence from other residents [see *id.*]. The federal survey of the facility indicates that the problems at Somerset were systemic. [See 1-5, at 7].

In addition to responding to Somerset's contentions regarding the appropriateness of a TRO, the Secretary this morning filed a motion to dismiss the action from this court for want of subject-matter jurisdiction [12]. For the reasons set forth below, Somerset's motion for a temporary restraining order [6] is denied. The Secretary's motion to dismiss for lack of subject matter jurisdiction [12] is taken under advisement. The Court either will set an in initial briefing schedule on that motion by separate minute order after consultation with the assigned judge or will defer briefing on the issue until the parties may appear before the assigned judge.

I.  **The Statutory Scheme**

Medicaid services are part of a complex statutory scheme. See 42 U.S.C. § 1396, *et seq*. (the "Act"). A discrete part of that scheme forms the backbone of the Department's actions against Somerset. Under the Act, a "nursing facility must provide services and activities to attain

or maintain the highest practicable physical, mental, and psychosocial well-being of each resident in accordance with a written plan of care." 42 U.S.C. § 1396r(b)(2). At oral argument, counsel agreed that Somerset is a "nursing facility" as defined in the Act. Section 1396r provides considerable guidance on how to meet the statutory standards while protecting numerous "residents' rights," including, for example, the "right to voice grievances with respect to treatment or care that is (or fails to be) furnished, without discrimination or reprisal for voicing the grievance." *Id.* § 1396r(C)(1)(A)(vi). Upon voicing grievances, patients have the "right to prompt efforts by the facility to resolve grievances the resident may have, including those with respect to the behavior of other residents." *Id.*

Section 1396r also includes enforcement provisions. Notably, "[i]f [the Secretary] finds, on the basis of" surveys conducted in accordance with the act, "that a nursing facility no longer meets [specified statutory requirements], and further finds that the facility's deficiencies immediately jeopardize the health and safety of its residents, the [Secretary] shall take immediate action to remove the jeopardy * * *." 42 U.S.C. §§ 1396r(h)(1) (state authority and duties), 1396(h)(3) (according the Secretary the same authority and duties as States). The Secretary may do this through a variety of overlapping remedies, including terminating the facility's participation in Medicaid, appointing temporary management to run the facility, and imposing monetary fines. *Id.* §§ 1396r(h)(1),(3). The statute gives the Secretary authority to issue regulations that implement her authority. *Id*. § 1396r(h)(3).

Several agency regulations speak to immediate jeopardy and the amount (and timing) of process that is available to a nursing facility when the Secretary is contemplating decertification of a nursing facility. The regulatory trigger for action upon a finding of immediate jeopardy is found at 42 C.F.R. § 488.410. In pertinent part, the provision provides: "If there is immediate

3

jeopardy to resident health or safety, the State must (and CMS does) either terminate the provider agreement within 23 calendar days of the last date of the survey or appoint a temporary manager to remove the immediate jeopardy." The regulations allow the Secretary to develop a plan to address problems at facilities. See, *e.g.*, *id.* § 488.424. The regulations direct the Secretary to consider numerous factors before it selects a remedy. *Id.* § 488.404.

Finally, at least for present purposes, the Act sets out appeal rights for nursing facilities. Here, too, the regime is complex and requires some description. First for purposes of Part 498 of the Code of Federal Regulations, a nursing facility is considered a "provider." 42 C.F.R. § 498.4 ("NFs subject to appeals process in part 498."). The regulations provide that the appeals procedures relate to "initial determinations" made by CMS regarding providers with respect to certain matters. *Id.* § 498.3(a). Among those initial determinations is CMS's decision to terminate a nursing facility's provider agreement with Medicaid. *Id.* § 498.3(a)(2)(i). When it comes to appeals by nursing facilities, the regulations provide that "[u]nder the circumstances specified in § 431.153(g) and (h) of this chapter, an NF has a right to a hearing before an ALJ, to request Board review of the hearing decision, and to seek judicial review of the Board's determination." *Id.* § 498.5(k). Section 431.153(g) does not appear to be implicated in this case. Section 431.153(h) states that if CMS determines that a nursing facility is not in substantial compliance with its statutory and regulatory requirements, then the nursing facility is entitled only "to the appeals procedures set forth in part 498." Thus, neither the statute which directs the Secretary to act immediately (42 U.S.C. § 1396r(h)(1)) nor its implementing regulations require a pre-termination hearing.

## II. Legal Standard on Temporary Restraining Orders

Like all forms of injunctive relief, a temporary restraining order is "an extraordinary remedy that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). A party seeking a temporary restraining order must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party meets this burden, then the court must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). Finally, the court considers the public interest served by granting or denying the relief, including the effects of the relief on non-parties. *Id.*; see also *Credit Suisse First Boston, LLC v. Vender*, 2004 WL 2806191, at *1 (N.D. Ill. Dec. 3, 2004). The court then weighs all of these factors, "sitting as would a chancellor in equity" (*Abbott*, 971 F.2d at 12) and applying a "sliding scale" approach, under which "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Ty, Inc. v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001).

## III. Analysis

### A. Jurisdiction

Although there may be interesting jurisdictional arguments related to this case, the Court need not address the matter in order to dispose of the instant motion. Although the preferable course in many instances is to decide jurisdictional questions because they speak to important

5

constitutional limitations of the federal judiciary, that is not always the case. *Cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999). A court should decide jurisdiction early in a case and before reaching a determination on the merits of a case (*id.* at 585), but it may hold off on deciding a jurisdictional question, even if it means issuing a temporary restraining order and preserving the status quo while the jurisdictional issue is being resolved. *United States v. United Mine Workers*, 330 U.S. 258, 290 (1947) ("the District Court unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction"); *Fernandez-Roque v. Smith*, 671 F.2d 426, 431 (11th Cir. 1982) ("A district court possesses inherent powers of equity sufficient to enable it to preserve the status quo until the question of jurisdiction can be resolved").

In this case, the parties have identified two cases that were handed down by the Seventh Circuit, which, they argue, speak to the question of the Court's jurisdiction. The Secretary relies on *Health Equity Resources Urbana, Inc. v. Sullivan*, 927 F.2d 963 (7th Cir. 1991), to argue that the Court does not have jurisdiction over the action. Somerset relies on *Illinois Council on Long Term Care, Inc. v. Shalala*, 143 F.3d 1072, 1076 (7th Cir. 1998), in arguing that the Court does have jurisdiction. Both the Secretary and Somerset distinguish the facts of the instant case from the unfavorable Seventh Circuit opinion invoked by the other. Depending on how one reads the holdings of these cases, they may indeed point in different directions on the question of jurisdiction. Because the Court denies Somerset's motion for a temporary restraining order at this time, the Court need not wade into this jurisdictional thicket at this time and without the benefit of full briefing by the parties or adequate time to carefully study the pertinent case law. Indeed, given that the Court is not invoking its "inherent powers of equity" (*Fernandez-Roque*,

6

671 F.2d at 431), it becomes even less necessary to address the question of jurisdiction in the emergency context of Somerset's motion.

B. **TRO Factors**

1. **Likelihood of Success on the Merits**

A party seeking a TRO or a preliminary injunction must demonstrate "that it has a 'better than negligible' chance of success on the merits of at least one of its claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1096 (7th Cir. 2008). Although the Seventh Circuit teaches that this is an "admittedly low requirement" (*id.*), the Court concludes that Somerset has not met its burden in this case.

Somerset's motion is grounded in the Due Process Clause of the Fifth Amendment to the United States Constitution. Somerset contends that the Secretary, by terminating its provider agreement without a pre-termination hearing, will violate Somerset's rights to procedural due process. The Seventh Circuit teaches that evaluating due process arguments requires a two-step approach: "first, we ask whether the plaintiff has been deprived of a protected liberty or property interest; if so, we ask whether the deprivation occurred without due process." *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 5889 F.3d 685 (7th Cir. 2009). The Secretary does not contest that Somerset has a protectable property interest; rather the Secretary's argument is that the procedures available to Somerset "fully satisf[y] the constitutional requirements for due process." Def. Resp. at 15.

The evidence in the record at this time indicates that Somerset has received all of the process that it is due under the Constitution. During today's hearing on the motion, the Court heard testimony from Ellen Greif, the Branch Manager for Care and Enforcement within CMS. She testified that if this Sunday's scheduled termination goes forward, it will take place after

Somerset had received notice in early or mid-January of 2010 of the specific alleged deficiencies at Somerset. In addition, the record establishes that Somerset had an opportunity to submit numerous proposed plans to address the deficiencies. Although ten of those plans were rejected, the most recent plan has been accepted by CMS – which means simply that CMS agrees that *if* the facility does everything it proposes, then there will be no immediate jeopardy. When the plans were rejected by CMS, the surveyors who examined the nursing facility gave both written and oral feedback to the nursing facility. Indeed, CMS personnel are at Somerset today completing a "revisit survey." Moreover, an exhibit that Somerset attached to its complaint indicates that CMS informed Somerset that its patients were in "immediate jeopardy" as early as October of 2009.

Although the evidence in the record is admittedly limited at this time, and the circumstances set forth in today's opinion surely will be subject to additional factual and legal development before the assigned judge, Somerset has not shown that it is entitled to a temporary restraining order. Most importantly, Somerset has not shown, under governing precedent, that a post-termination hearing would violate its due process rights. In *Americana Healthcare Corp. v. Schweiker*, the Seventh Circuit explicitly cabined earlier precedent – *Hathaway v. Mathews*, 546 F.2d 227 (7th Cir. 1976) – on which Somerset relies in support of its argument that it is entitled to a pre-termination hearing:

> In *Hathaway* the Medicaid facility was terminated from the Medicaid program by the U. S. Department of Health and Human Services acting independent of the state Medicaid agency and it did not receive notice of the alleged deficiencies, nor was a post-termination hearing available to it under the applicable regulations. This is contrasted with the fact situations presented here, wherein each of the plaintiffs received written notice of the alleged deficiencies and had post-termination procedural protections available to them. *To the extent that Hathaway remains good law within the circuit it is limited to its unique factual situation, including a lack of prior notice of deficiencies from the terminating agency and the absence of post-termination appeal procedures.*

*Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072, 1083 (7th Cir. 1982) (emphasis added). Every other circuit of which the Court is aware to have opined on this matter has reached the same conclusion as the Seventh Circuit did in *Americana*. See, *e.g.*, *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 583 (2d Cir. 1989); *Town Court Nursing Center, Inc. v. Beal*, 586 F.2d 266, 277-78 (3d Cir. 1978). Based on the evidence in the record to this point, including the written exhibits and affidavits from workers at the facility, it appears that Somerset had substantial interactions with CMS prior to termination of its certification, which makes this case analogous to *Americana* and distinct from *Hathaway*. See *Americana*, 688 F.2d at 683. In addition, the regulations provide post-termination appeals procedures. This case therefore falls squarely outside of what (if anything) remains of the Seventh Circuit's earlier decision in *Hathaway*. The Court does not reach an issue that appears to be in flux—namely, the timing of any post-termination hearing and the interaction of that question with the Due Process Clause. The issue is not implicated by Somerset's motion, which argues only that it would be unconstitutional to terminate Somerset's certification *prior* to a hearing. Finally, as noted above, neither the pertinent statutes nor the applicable regulations require a pre-termination hearing. For present purposes, the upshot of this analysis is that Somerset has little or no chance of succeeding on the merits of the argument that has brought it to Court seeking immediate injunctive relief – namely, that it has a constitutional right to a pre-termination hearing.

## 2. Irreparable Harm/Absence of Adequate Remedy at Law

The other two threshold elements that Plaintiff must prove to support the issuance of a TRO or a preliminary injunction are that it (1) has no adequate remedy at law and (2) will suffer irreparable harm if the relief is not issued. These two requirements—irreparable harm and no adequate remedy at law—tend to merge. See *Roland Machinery Co. v. Dresser Indus., Inc.*, 749

F.2d 380, 387 (7th Cir. 1984). "The question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded damages." *Id.* An injury is "irreparable" when it is of such a nature that the injured party cannot be adequately compensated in damages or when damages cannot be measured by any pecuniary standard. *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997); see also *Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages").

Here, too, the Court concludes that Somerset has not met its burden, which is higher under the Seventh Circuit's "sliding scale" approach that it would be if Somerset had demonstrated some likelihood of success on the merits of its due process claim. At oral argument counsel for Somerset indicated that it funds current operations with funds received from the previous 60 days. In light of the uncertainty surrounding when a post-termination hearing will occur—Somerset has sought expedited review before an ALJ—it is not clear that Somerset will not be made whole in the event that an ALJ rules in its favor. The conclusion is bolstered by the facts that counsel for the Secretary stated that the Defendants would not oppose a motion for an expedited appeal before the ALJ and Somerset would be entitled to recover monies that it would have been owed, if it turns out the termination of the provider agreement was erroneous. While it is true that if the decision to terminate is made on Sunday, Somerset will have lost any opportunity for a pre-termination appeal, the foregoing analysis indicates that Somerset has no right to any such appeal.

### 3. Balance of Harms and Public Interest

At best, the balance of harms and public interest are in equipoise. The Secretary contends that $42,000 of federal monies would be at stake if the temporary restraining order were to issue. Somerset argues that it would lose much more. Likewise, although Somerset argues that its employees will suffer economic hardship and its residents will suffer mental anguish if a TRO does not issue, it is hardly clear that it is in the patients' best interest to remain at Somerset. In fact, the Secretary has determined that remaining at Somerset is not in the residents' best interest. *Matthews v. Eldridge* teaches that the determination of the Secretary, as an expert, cannot be disregarded lightly. 424 U.S. 319, 349 (1976) ("substantial weight must be given to the good-faith judgments of the individuals charged by Congress with the administration of social welfare programs that the procedures they have provided assure fair consideration of the entitlement claims of individuals."). Somerset has not, at this point, marshaled sufficient evidence to call the Secretary's judgment into question.

## IV. Conclusion

For the foregoing reasons, Somerset's motion for a temporary restraining order [6] is denied. The Secretary's motion to dismiss for lack of subject matter jurisdiction [12] is taken under advisement. This case is set for further status hearing before Judge Der-Yeghiayan on February 12, 2010 at 11:00 a.m.

Dated: February 5, 2010

Robert M. Dow, Jr.
United States District Judge